

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 6179 | DATE | 12/2/02 |
| CASE TITLE | Horton v. Wilson, et. al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment (Doc. # 30)

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the attached reasons, the Court GRANTS Defendants' motion for summary judgment (Doc. #30) and the cause is dismissed with prejudice. All other pending motions are moot.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | Document Number |
| | No notices required. | | |
| | Notices mailed by judge's staff. | DEC 0 3 2002 | |
| | Notified counsel by telephone. | date docketed | 42 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

02 DEC -3 PM 6:11
U.S. DISTRICT COURT CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLIFFORD HORTON, | ) |
| | ) Case No. 00 C 6179 |
| Plaintiff, | ) |
| | ) The Honorable William J. Hibbler |
| v. | ) |
| | ) DOCKETED |
| RAMONA WILSON, *et al.* | ) |
| | ) DEC 4 2002 |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Clifford Horton ("Plaintiff") brings suit against Chicago Police Officers Ramona Wilson, Detra Gross, Melanie Henry, Johnnie Larry, and William Zaremba ("Defendants") under 42 U.S.C. § 1983. Plaintiff alleges the Police Officers violated his Fourth Amendment rights by falsely arresting him and using excessive force after arresting him. The Court has before it a Motion for Summary Judgment filed by Defendant Police Officers. For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

### II. STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine

1

issue of material fact exists, we construe all facts and inferences in the light most favorable to the non-moving party, drawing all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, a plaintiff must set forth specific facts that demonstrate a genuine issue of triable fact and must produce more than a scintilla of evidence to support his position. *See Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 669 (7th Cir.2000). If the record as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir.1998). Thus, a genuine issue of material fact exists only where the dispute over the facts might affect the outcome of the lawsuit and there is sufficient evidence to support a jury verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

### III. FACTS

Late at night, on October 10, 1998, Plaintiff Clifford Horton, then 65 years old, rear-ended another car causing multiple injuries. The driver of the car that Horton rear-ended approached Plaintiff who refused to talk to her.[1] Shortly after the accident, Officers Ramona Wilson, Detra Gross and Melanie Henry arrived at the scene of the accident, and

---

[1] In his complaint, Horton describes the driver of the other car as an "unknown male," although the driver was, in fact, female, as Horton later recognizes in his deposition.

2

the driver of the other vehicle reported to them that she suspected Horton was intoxicated. The officers proceeded to Horton's vehicle and observed that he had blood shot eyes, a strong odor of alcohol coming from his breath, and slurred speech. The officers requested that Horton submit to a blood alcohol test, but he refused. According to Horton, he could not hear the officers' request because of significant hearing loss and he was not wearing his hearing aid. After Horton refused to submit to the blood alcohol test, the officers arrested him for driving under the influence and given citations for driving under the influence, insurance violations and following too close to another automobile.

Horton, however, was uncooperative and refused to get out of his car, allegedly because he could not hear the officer's request. As a result, the officers opened Horton's car door and dragged him to the police cruiser. To effectuate the arrest, the officers grabbed his ankle and held one shoulder while his other leg dragged on the ground. Horton contends his leg was twisted while he was dragged to the cruiser and his head was bent to get it into the cruiser. Horton admits that the entire removal process lasted approximately 2-3 seconds. Once inside the police care, Horton complained that the handcuffs were too tight.[2]

---

[2] It is unclear from Horton's complaint and Defendants' motion when the handcuffs were placed on him. Certainly, it would not have been possible to handcuff Horton and transport him to the squad car in a matter of seconds. The parties, however, do not dispute that Horton was handcuffed during the time he was in the squad car.

3

Several police officers (none of whom are defendants) then transported Horton to the hospital to make sure he was not injured in the accident. Despite a hospital report detailing his visit to the hospital the evening of the accident, Horton insists, without evidentiary support, that he never went to the hospital on that evening. The hospital records confirm the officers' observation that Horton was uncooperative. According to the report, Horton refused to cooperate with the triage nurse and screamed curse words at her. He further refused to allow hospital staff to check vital signs and repeatedly chanted "take the handcuffs off," while on the floor.[3] The hospital staff observed no injuries and Horton did not complain of any pain.

After being treated at the hospital, Horton was then transported to the police station to process his arrest. At the station, Horton's belligerence continued as he refused to be fingerprinted or to answer the officers' questions. Each of the defendant officers submitted affidavits stating that Horton appeared to be drunk at the station. Horton was then placed in a jail cell, and he again complained about the tightness of the handcuffs and the bending of his fingers. Upon his release the next morning, Horton did not file any complaints regarding the officers' use of force or regarding any missing property.

On October 19, 1998, Horton visited a physician, complaining of pain from the arrest that had occurred nine days earlier. During the visit, Horton gave a detailed factual

---

[3] The records do not indicate whether Horton was lying or sitting on the floor.

his physician, Officer Wilson and another unidentified officer, slammed his hand against a steel bench while his hands were cuffed behind his back, causing severe injury and causing him to lose a diamond ring. The defendant-officers deny that they used excessive force in arresting Horton.

Shortly after filing the lawsuit, Horton identified Officer Wilson as a defendant because her name was on the tickets he received for the various violations. During the course of the litigation, Horton identified the other named defendant-officers as officers he believes might have been involved in his arrest. Horton, however, cannot identify specifically the actions of any of the other named officers who allegedly participated in his arrest. Instead, Horton identifies only Officer Wilson as one of the officers that allegedly used excessive force against him and claims that he could make in-court identifications of the other officers when the case goes to trial. It must be noted that Horton's account of his various injuries is muddled and inconsistent; it is unclear when each event occurred and which officer was responsible or present. For example, in his interrogatory answers, he asserts that his fingers were bent back during the first handcuffing at the scene of the accident. On the other hand, in his deposition and in his complaint to the Office of Professional Standards, he instead asserts that his fingers were bent back when he was placed in handcuffs at the police station.

description of his arrest and alleged injuries to his treating physician. Horton complained only that his leg had been twisted during the arrest, that the handcuffs had been tightly placed on his wrists, and that his fingers were bent while the officers placed him in handcuffs. The doctor noted that Horton voiced subjective complaints of numbness in his fingers, but that he was able to identify, with his eyes closed, when his fingertips were lightly touched. The doctor also observed "superficial" bruising from the handcuffs.

Horton next complained about his arrest to the Office of Professional Standards on October 23. In his statement to the Office of Professional Standards, Horton was asked to describe his complaint. Horton first described his arrest at the scene of the accident and then complained of his treatment at the police station, stating that "...Officer Wilson then dragged me into a cell, bent my fingers on my right hand back, and placed the handcuffs on me tightly." Horton also complained that his knee hurt when he walked due to the way he was moved from his car to the police car. Horton made no allegations regarding any missing property. At the conclusion of the statement, officials asked Horton whether he wished to add anything to the statement and Horton informed them that the statement was complete.

Horton then filed this complaint against unknown officers, alleging that his arrest was unlawful and effectuated with excessive force. In his complaint, Horton stated that in addition to the behavior he complained about to the Office of Professional Standards and

5

The officers have moved for summary judgment, arguing that they had probable cause to arrest Horton and that they did not use excessive force against Horton and thus are entitled to qualified immunity.

IV. ANALYSIS

A. Qualified Immunity

The threshold inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If a plaintiff can establish that he has suffered a constitutional violation, a court then examines whether the right was clearly established. *See id.* As the Court explained in *Saucier*, qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206.

B. Horton's Unlawful Arrest Claim

The existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest. *Potts v. City of Lafayette, Ind.*, 121 F.3d 1106, 1113 (7th Cir. 1997). While the existence of probable cause is often a jury question, summary judgment is appropriate "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 473 (7th Cir. 1997) (citing *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994)). Probable

cause to arrest exists if the facts and circumstances within the officer's knowledge and reasonably trustworthy information he or she has are sufficient to warrant a prudent person in believing that the suspect has committed or was committing a crime. *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996). Probable cause is evaluated "based on the facts as they would have appeared to a reasonable person in the position of the arresting officer — seeing what he saw, hearing what he heard." *Booker*, 94 F.3d at 1057-58. This approach does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable. *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1434, 75 L.Ed.2d 502 (1983); *Wollin v. Gondert*, 192 F.3d 616, 623 (7th Cir. 1999).

The undisputed facts show that the officers had probable cause to believe that the Horton was intoxicated while operating his car. First, three officers noticed that Horton exhibited symptoms of intoxication. The officers each submitted affidavits stating that they smelled alcohol on his breath, that his eyes were bloodshot and that his speech was slurred. Furthermore, the women involved in the accident with Horton informed the officers that she believed him to be intoxicated. Lastly, Horton refused blood alcohol testing at the scene of the accident. According to Horton, the officers did not have probable cause to arrest him because he was not drunk. But the standard for probable cause does not require that the officer's belief be correct or even more likely true than false; the officer's belief must only be reasonable. *Brown*, 460 U.S. at 742. Indeed, probable cause to arrest for

8

intoxication has been found even where it was later proven that the arrestee had not consumed any alcohol. *See Qian v. Kai*, 168 F.3d 949, 954 (7th Cir. 1999); *Hirsch v. Burke*, 40 F.3d 900, 903 (7th Cir. 1994). In this case, the officer's beliefs were reasonable. Not only did a witness at the scene tell the police officers she believed the Horton was drunk, the officers also observed several legitimate physical characteristics indicating that he was drunk. Horton offered no evidence to dispute the credibility of the officers' or the witness's observations, and therefore the Court finds that the officers had probable cause to arrest Horton. Accordingly, summary judgment for all the officers is GRANTED with respect to Horton's unlawful arrest claim.

### B. Horton's Excessive Force Claim

#### 1. Officers Gross, Henry, Larry, & Zaremba

"Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Ford v. Lane*, 715 F. Supp. 310, 315 (N.D. Ill. 1989). Each of the defendant-officers has submitted affidavits averring that they did not use excessive force against Horton and that they neither caused his hand to be smashed into a steel bench nor bent his fingers while placing handcuffs on him. Horton has submitted no evidence to contest the affidavits of Officers Gross, Henry, Larry and Zaremba. Indeed, Horton identifies no officer, other than Wilson, who was present at the

9

scene of the accident. Neither does he recall any conversation with any of the officer-defendants (other than Wilson), nor can he identify any officer who transported him to the hospital or to his jail cell. Horton has stated in his deposition that he does not know what, if anything, any of the officers did to him or why they are defendants. Thus, he has nothing but vague conjecture and speculation as to whether any of these defendants were involved in any of the allegedly unconstitutional activities. For example, Horton, does not even know who Officer Gross is or why she is involved in the lawsuit and surmises only that "he [sic] probably was in the bunch." Officer Gross, however, is *female*. Horton has offered no evidence to suggest that any officer, other than Officer Wilson, participated in any alleged constitutional deprivation.

Horton protests that he would be able to identify the officers in court, in order to sort out which officer participated in the allegedly unconstitutional arrest and detention. Horton's solution is untimely and unfair. He has had over two years to take the depositions and use other discovery methods to identify the officers that arrested and detained him. All of the officers have submitted affidavits averring that they did not use any force against him other than that necessary to transport him from his car into the police cruiser at the time of his arrest. Horton cites to *Miller v. Smith et al.*, 220 F.3d 491 (7th Cir. 2000) for the proposition that even where a plaintiff cannot identify the specific actions of an officer, he should be permitted to make an in-court identification. But the plaintiff in

*Miller*, at a bare minimum, was able to identify three officers who stopped him, mistakenly believing him to be a fleeing felon, and was certain that one of the three had beaten him while he lay face down on the ground while the other two watched. *Miller*, 220 F.3d at 495. Thus, Miller *did* identify that each of the three officers he had sued, and argued that each of the three either used excessive force or idly stood by and allowed another officer to use excessive force, both of which stated claims for constitutional violations. In this case, Horton has only speculation as to the involvement of any of the defendant officers (except Wilson) and therefore summary judgment is GRANTED in favor of defendants Gross, Henry, Larry and Zaremba with respect to Horton's excessive force claim.

2. **Officer Wilson**

To determine whether an officer's use of force is excessive, courts employ an objective standard. *Graham v. Conner*, 490 U.S. 386, 397 (1989). The court must determine "whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Not every push or shore is a violation of Plaintiff's fourth amendment rights. *Id.* at 396. Relevant considerations include the "severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.* at 397. Courts must also consider "whether the citizen ... was interfering or

attempting to interfere with the officer's execution of his or her duties." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir.2000). Horton contends that Officer Wilson used excessive force in: 1) removing him from his car; 2) placing the handcuffs upon him too tightly; and 3) slamming his hand against a steel bench. The Court will examine each alleged use of excessive force in turn.

Horton first alleges that the Officer Wilson used (or directed others to use) excessive force when removing him from his car and placing him in the police car. Horton claims Wilson and other unknown police officers grabbed one ankle, held his shoulder and dragged him to the police car with the other foot dragging, severely twisting his leg in the process. Horton concedes the entire removal and placement into the cruiser took a mere 2-3 seconds. Police necessarily must have some discretion to use force in order to remove a potentially intoxicated driver from his vehicle. *Smith v. Ball State Univ., et. al.*, 295 F.3d 763, 769 (7th Cir. 2002); *Brownell v. Figel*, 950 F.2d 1285, 1292-93 (7th Cir. 1991). If police could not use some physical force to remove an intoxicated suspect from his car, the suspect could pose a significant hazard to the public by continuing to drive drunk. *Smith*, 295 F.3d at 769. Horton argues that he was not drunk, and therefore, the police used excessive force in arresting him. Horton also argues that he did not "refuse" to submit to a blood-alcohol exam because he could not hear Officer Wilson's request. But Horton confuses the standard the Court uses to assess whether an officer's use of force is

reasonable. Whether Horton was actually intoxicated is not a *material* fact; the only material fact is whether the officers' belief that he was intoxicated was reasonable. Similarly, whether Horton refused to submit to the test or failed to hear the officer's request is not a genuine issue of material fact; instead, it only matters whether the officers reasonably believed him to have refused the exam. As noted earlier, it was reasonable for the officers to believe Horton was intoxicated. Further, when he failed to comply with their lawful instruction to submit to a blood-alcohol examination, it was reasonable for them to believe that he had refused to obey a lawful instruction. The officers therefore were faced with a situation in which they perceived an apparently an intoxicated driver who failed to leave his car or submit to a blood-alcohol exam. Under these circumstances, it was *reasonable* for the officers to use some force to remove Horton from his vehicle. *See Smith* 295 F.3d at 769; *Brownell*, 950 F.2d at 1292-93.

Further, Officer Wilson and the other arresting officers used only that force that was necessary to remove Horton from his car. In both *Smith* and *Brownell*, the officers involved used a much greater degree of force than was used here. In *Smith*, the officers removed the plaintiff from his car using a straight-arm bar, and when Smith appeared to struggle, scuffled with him, used a knee strike, and caused Smith to fall to the ground and suffer a bruised head. *Smith*, 295 F.3d at 770-71. In *Brownell*, the officers attempted to rouse an uncooperative plaintiff with two different techniques, designed to cause the plaintiff pain.

*Brownell*, 950 F.2d at 1293. In this case, officers used only the force necessary to move Horton from his car into the police car, simply grabbing his ankle and shoulder and hoisting him into the cruiser over the time span of two to three seconds. The Court finds that Officer Wilson's use of force in removing Horton from his vehicle was not excessive.

Horton next alleges that Officer Wilson used excessive force when she placed the handcuffs on him too tightly and refused to remove them. Horton also complains that Officer Wilson bent his finger when placing him in the handcuffs. Handcuffing is a reasonable restraint and handcuffs must be tight in order to prevent the arrestee's hands from slipping out. *Trout v. Frega*, 926 F. Supp. 117, 121-22 (N.D. Ill. 1996); *see also Wolinsky v. City of Chicago*, 2000 WL 631292, *2 (N.D. Ill. 2000). Further, Police officers must use some physical force in order to place handcuffs on a suspect. *Trout*, 926 F. Supp. at 121-22.

While it is true that a refusal to loosen chaffing handcuffs *without excuse*, could be deemed an excessive use of force, see *Herzog v. Village of Winnetka, Ill.*, 309 F.3d 1141, 1143 (7th Cir. 2002), the facts of this case are different. In this case, Horton was not cooperative, but instead, extremely uncooperative and belligerent. Although Horton asserted in his deposition that he did not resist arrest, he does not dispute the hospital report or the officers' affidavits that aver that he refused to be fingerprinted at the police station. He also does not dispute that he did not comply with the officers' request to submit to a blood-alcohol exam when he was initially arrested, contending only that he had not heard the

officer. It follows that some physical force was necessary to place him in handcuffs. The Court finds that in light of Horton's failure to cooperate with the officers and their reasonable belief that he was intoxicated, that the Officer Wilson did not use excessive force in placing Horton in handcuffs while transporting him to the hospital and during the time that he was being booked at the police station. *Cf. Smith*, 295 F.3d at 770-71 (holding that officers use of handcuffs, even after learning that suspect was not intoxicated but had a medical condition, was reasonable because it was necessary to preserve the officers', the public's and even the suspect's safety).

Horton's final claim that Officer Wilson used excessive force concerns his allegation that Officer Wilson slammed his handcuffed hand into a metal bench on which he was sitting. Horton claims that his testimony during deposition to this effect is sufficient to create a genuine issue of material fact. The Court disagrees. To stave off summary judgment, however, a party must do more than assert a "metaphysical doubt" as to the existence of a material fact. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party summary judgment is appropriate. *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1384, 89 L.Ed.2d 538 (1986)).

Horton's deposition testimony is flatly contradicted by his previous statements. When he complained to the Office of Professional Standards, a mere 13 days after his arrest,

he did not describe his hand being slammed against a steel bench. Instead, he complained *only* about his removal from his car and the tightness of his handcuffs. In that complaint, which Horton signed as a true and complete description of the events forming the basis of this complaint, Horton states:

> This is where my complaint against P.O. Wilson begins. Officer Wilson twisted my legs so I could not walk. Officer Wilson then dragged me into a cell, bent my fingers on my right hand back, and placed the handcuffs on me tightly. During the incident I did not resist arrest at all. I have no idea why the officer did this to me, but this is my complaint.

Nowhere in his statement does Horton complain about losing a diamond ring or about having his hand slammed against a steel bench. Furthermore, when Horton sought treatment for his injuries from a physician, he provided the doctor with a detailed account of his arrest, but never mentioned any hand-slamming incident. The Seventh Circuit has refused to allow a blind affidavit to retract earlier admissions and contradictory statements, even those that are not provided under oath. *See Seshadri v. Kasraian*, 130 F.3d 798, 804 (7th Cir. 1997) (refusing to allow plaintiff's affidavits, offered without explanation, to controvert the plaintiff's written admissions made in documents and defeat summary judgment motion). The Court finds that Horton's self-serving deposition testimony that conflicts with his Office of Professional Standards complaint and his report to his treating physician is insufficient to create a genuine issue of fact upon which to preclude summary judgment.

Finally, the hand-slamming incident, even as reported by Horton in his deposition testimony, does not rise to the level necessary to constitute excessive force. Although Horton's claim that Officer Wilson slammed his handcuffed hand into a steel bench might rise to the level of excessive force *if* Officer Wilson had done so without provocation or in fear for her safety, those are not the facts here. As noted earlier, throughout the arrest process, Horton was belligerent and uncooperative. Whether an officer uses excessive force depends, in part, on whether the suspect was interfering or attempting to interfere with the officer's execution of his or her duties." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir.2000). At the time Horton claims Officer Wilson slammed his hand into the bench, Horton had just refused to allow the officers to fingerprint him. Thus, at the very least, Horton was interfering with Officer Wilson's efforts to complete her duty of booking a suspect reasonably believed to have been intoxicated. Horton offers no evidence in support of his claim that Officer Wilson's alleged "hand-slamming" in fact injured him: not a single doctor's report, prescription for medication, or photograph. *See McNair v. Coffey*, 279 F3d 463, 484 (7thCir. 2002) (Coffey, J., concurring) (concluding that a lack of objective evidence to establish injury defeated plaintiffs' claim that officers used excessive force). From the period of time covering his arrest, his treatment at the hospital, and his booking at the police station, Horton was not passive and refused to respond to the requests of the officers and the hospital staff. The Court finds that Officer Wilson was faced with an uncooperative

arrestee and given the absence of any objective documentation of injury, the Court finds that even if Officer Wilson did "slam" Horton's hand onto a bench, her use of force did not rise to the level of being excessive.

Because the Court finds that Horton has introduced no evidence to support his claim that Officer Wilson used excessive force to effectuate his arrest, he has failed to state a constitutional claim and Officer Wilson is entitled to qualified immunity. Therefore the Court grants summary judgment in favor of Officer Wilson with respect to Horton's excessive force claim.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS the Defendants' motion for summary judgment in its entirety and the cause is DISMISSED with prejudice.

IT IS SO ORDERED.

12/2/07
Date

The Honorable William J. Hibbler
United States District Court